# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| ALPHA MODUS, CORP., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:25-cv-01003 |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMAND** |
| SENSORMATIC ELECTONICS, LLC, and | ) | |
| JOHNSON CONTROLS | ) | |
| INTERNATIONAL, PLC | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Alpha Modus, Corp. ("Alpha Modus" or "Plaintiff") files this Complaint for Patent Infringement and Demand for Jury Trial against Sensormatic Electronics, LLC and Johnson Controls International, PLC (collectively, "Sensormatic" or "Defendants") for infringement of United States Patent Nos. 10,853,825 ("the '825 Patent"), 12,039,550 (the "'550 Patent"), and 11,042,890 (the "'890 Patent"), and 11,301,880 (the '880 Patent") (collectively the "Patents-in-Suit").

## THE PARTIES

1. Alpha Modus is a corporation organized and existing under the laws of Florida and located at 20311 Chartwell Center Dr., Suite 1469, Cornelius, North Carolina 28031.

2. Upon information and belief, Defendant Sensormatic Electronics, LLC is a corporation organized and existing under the laws of Nevada and may be served with process through its registered agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

3.      On information and belief, Defendant Johnson Controls International PLC is a public limited company organized under the laws of Ireland and maintains a regular and established places of business at 1095 Gum Springs Rd, Longview, Texas 75602 and at 4683 College St, Beaumont, TX 77707.

## JURISDICTION AND VENUE

4.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 154, 271, 281, and 283-285.

5.      This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338.

6.      This Court has personal jurisdiction over Defendant Johnson Controls International PLC at least because Defendant Johnson Controls International PLC maintains places of business in this District at 1095 Gum Springs Rd, Longview, Texas 75602 and at 1095 Gum Springs Rd, Longview, Texas 75602 and at 4683 College St, Beaumont, TX 77707, and engages in continuous and systematic business activities within this District, including conduct giving rise to this action.

7.      This Court has personal jurisdiction over Defendant Sensormatic Electronics, LLC at least because Defendant Sensormatic Electronics, LLC engages in continuous and systematic business activities within this District, including conduct giving rise to this action.  Defendant Sensormatic Electronics, LLC's website identifies many retailer customers having places of business located, on information and belief, in this district, including but not limited to Kroger, Levi's, Puma, Claire's, Adidas, Mango, and T-Mobile.  (*See* https://www.sensormatic.com/about-us/our-customers).

8.      This Court also has personal jurisdiction over Defendant Johnson Controls International PLC at least because Defendant Johnson Controls International PLC is identified as

the sole owner of the content provided on the https://www.johnsoncontrols.com/ website, which describes and offers for sale the products of Defendant Sensormatic Electronics, LLC identified as infringing the Patents-in-Suit as described in this Complaint.  This website is available and accessible by customers, including customers within this District.

9.      This Court also has personal jurisdiction over Defendants at least because Defendants have committed acts of patent infringement giving rise to this action within the State of Texas and this judicial district and thus have established minimum contacts such that the exercise of personal jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice.

10.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1400(b) and 1391(c)(3) because Defendant Johnson Controls International PLC is a foreign corporation subject to suit in any district and because Defendant Johnson Controls International PLC maintains a regular and established place of business at 1095 Gum Springs Rd, Longview, TX 75602, which is in this District and has committed acts of patent infringement in this District.  On information and belief, Defendant Sensormatic Electronics, LLC is a wholly owned subsidiary of Defendant Johnson Controls International PLC.  On information and belief, Defendant Sensormatic Electronics, LLC is a wholly owned subsidiary of Defendant Johnson Controls International PLC.

11.      On information and belief, Defendant Sensormatic Electronics, LLC is controlled by and operates as an alter ego or agent of Defendant Johnson Controls International PLC.  For example, Sensormatic is a subsidiary of Defendant Johnson Controls International PLC and holds itself out as "Sensormatic by Johnson Controls" on its website. *See* https://www.sensormatic.com/. Further, the "Legal Terms" on the website indicate that the "website (the 'Site') is provided by Johnson Controls International plc and its affiliated companies ('Johnson Controls'),"

demonstrating that Johnson Controls holds its subsidiary companies, including Sensormatic, out as alter ego entities controlled by Defendant Johnson Controls International PLC. *See* https://www.johnsoncontrols.com/legal/terms.

## ALPHA MODUS'S INNOVATION IN RETAIL TECHNOLOGY

12.     Alpha Modus Corp. specializes in the development of innovative retail technologies.

13.     At the core of Alpha Modus's technology portfolio, including the Patents-in-Suit, is the capability to analyze consumer behavior and product interaction in real-time. This advanced capability allows businesses to dynamically adjust their marketing strategies to meet the immediate needs of consumers at pivotal purchasing decision moments.

14.     Alpha Modus, in an effort to ensure transparency and accessibility, maintains a comprehensive presentation of its patent portfolio on its official company website, available at https://alphamodus.com/what-we-do/patent-portfolio/. The patent portfolio provided on Alpha Modus's website lists the Patents-in-Suit.

15.     Alpha Modus has entered into several intellectual property licensing agreements outside of litigation.

16.     These agreements are indicative of Alpha Modus's commitment to legally disseminating its patented technology.

## THE '825 PATENT

17.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 10,853,825 (the "'825 Patent") titled "Method for Monitoring and Analyzing Behavior and Uses Thereof," including the

right to sue for all past, present, and future infringement. A true and correct copy of the '825 Patent is attached to this Complaint at Exhibit A.

18.    The '825 Patent issued from U.S. Patent Application No. 16/509,343 filed on August 4, 2020.

19.    The '825 Patent is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

20.    The Patent Office issued the '825 Patent on December 1, 2020, after a full and fair examination.

21.    The '825 Patent is valid and enforceable.

22.    The '825 Patent introduces a novel method for monitoring and analyzing consumer behavior in real-time to enhance sales through engaging digital customer experiences.

23.    The '825 Patent addresses the emerging challenges faced by brick-and-mortar retail stores due to the increasing prevalence of online shopping and showrooming. It provides innovative solutions to enhance in-store customer experiences and counter the competitive pressures from online retail by leveraging real-time data analysis and personalized engagement strategies.

24.    The inventors of the '825 Patent recognized a significant gap in the ability of brick-and-mortar retail stores to provide real-time, personalized experiences to customers, a feature commonly leveraged by online retailers. The patent offers a method that bridges this gap by utilizing advanced technology to analyze consumer behavior and dynamically adjust marketing and inventory strategies accordingly.

25.    The '825 Patent provides several advantages over the prior art, such as real-time customer monitoring and the ability to generate targeted promotions and advertising based on

behavioral analytics. This approach aims to provide more relevant and engaging consumer experiences, thereby influencing purchasing decisions and potentially increasing in-store sales.



*FIG. 1*



*FIG. 2*

26.     The '825 Patent describes and claims a specific method incorporating information monitoring devices to gather and analyze data collected by tracking the demographic and tracking characteristics of customers to generate a real-time analysis, which is then used to communicate with sales associates for personalized customer interaction.

27.     Claim 1 of the '825 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about
     a first person in a group of persons at a retail store, wherein

(i) the first person is in proximity of at least one of the one or more information monitoring devices at the retail store,

(ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both,

(iii) the one or more information monitoring devices comprise one or more video image devices,

(iv) the step of gathering information using the one or more information monitoring devices comprises gathering a demographic characteristic of the first person using the one or more video image devices, wherein the demographic characteristic is selected from a group consisting of gender of the first person, approximate age of the first person, and combinations thereof, and

(v) the step of gathering information using the one or more information monitoring devices comprises gathering a tracking characteristic of the first person, wherein the tracking characteristic of the first person is selected from a group consisting of movement of the first person relative to the one more information monitoring devices, eye movement of the first person tracked by the one or more video image devices, and combinations thereof;

(b) analyzing in real time using (A) the server, (B) the one or more databases, or (C) both the information gathered by the information monitoring devices of the first person to generate a real time analysis of the first person, wherein the analyzed information comprises the demographic characteristic of the first person and the tracking information of the first person;

(c) utilizing the real time analysis to select a sales associate from a group of sales associates at the retail store; and

(d) sending a communication to the sales associate that comprises at least a portion of (A) the information gathered by the information monitoring devices, (B) the real time analysis, or (C) both; wherein the sales representative can then directly interact with the first person in response to the communication.

## THE '550 PATENT

28.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 12,039,550 (the "'550 Patent") titled "Method for Enhancing Customer Shopping Experience in a Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '550 Patent is attached to this Complaint at Exhibit B.

29.     The '550 Patent issued from U.S. Patent Application No. 17/590,605, filed on February 1, 2022.

30.     The '550 Patent is a continuation of prior applications tracing back through the family, including U.S. Patent No. 10,853,825 (filed July 11, 2019), and U.S. Patent No. 10,360,571 (filed July 18, 2014), ultimately claiming priority to a provisional application filed July 19, 2013.

31.     The U.S. Patent and Trademark Office issued the '550 Patent on July 16, 2024, after a full and fair examination.

32.     The '550 Patent is valid and enforceable.

33.     The '550 Patent introduces an innovative system for enhancing customer shopping experience in a retail store by monitoring and analyzing consumer behavior in real-time—leveraging technologies such as MAC-address tracking, object identification of goods, open APIs, and an advertising broker rules engine—to drive sales via engaging, real-time digital customer experiences.

34.     The '550 Patent addresses pressing challenges faced by brick-and-mortar retail in the face of showrooming and the dominance of online retail. It offers novel solutions to provide richer, data-driven, in-store experiences that strengthen customer engagement and counter competitive pressures, by providing real-time analytics and outreach strategies.

35.     The inventors recognized a vital deficiency in conventional brick-and-mortar stores: the lack of real-time insight into in-store shopper behavior that online retailers routinely exploit. The '550 Patent bridges this gap by providing a technological framework that enables retailers to capture behavioral data and dynamically adjust marketing, merchandising, and customer support accordingly.

36.    The '550 Patent offers several advantages over the prior art, including real-time behavior monitoring capabilities and the ability to deliver real-time engagement via interactive displays or sales assistance informed by tracking data—thereby enhancing the relevance of consumer interactions and potentially increasing in-store conversion rates.

37.    The '550 Patent describes and claims a specific system architecture that includes information monitoring devices to gather and analyze real-time behavioral and demographic data, which then drives interactive outputs like demographic-responsive displays and purchase facilitation.

38.    Claim 1 of the '550 Patent reads:

1. A method comprising:
(a) obtaining an information analysis about the shopping activities of a plurality of persons, wherein,
    (i) the information analysis is an analysis of gathered information by one or more information monitoring devices about shopping activities of a plurality of persons,
    (ii) the gathered information comprises gathered traffic information of the plurality of persons, wherein the gathered traffic information comprises traffic information gathered by at least one of the one or more information monitoring devices, and
    (iii) the gathered information further comprises gathered product interaction information of the plurality of persons, wherein
        (A) the gathered product interaction information comprises product interaction information gathered by at least one of the one or more information monitoring devices, and
        (B) the product interaction information is based upon type of interactions the persons had with one or more products, and
    (iv) the gathered information further comprises gathered object identification information, wherein
        (A) the gathered object identification information comprises object identification information gathered by at least one of the one or more information monitoring devices, and
        (B) the object identification information comprises the one or more products that the persons interacted with during the product interactions;
(b) providing the information analysis to a brand entity for enhancing in-store shopping experience of customers of one or more brick-and-mortar retail stores, wherein

      (i)  the brand entity is an entity that provides one or more brand products to one or more brick-and-mortar retails store; and,

(c) enhancing the in-store shopping experience of the customers of the one or more brick-and-mortar retail stores by an experience from the brand entity selected from the group consisting of

      (i)  engagement of the customer based upon the information analysis, wherein the engagement is received by the customer using one or more displays and content of the engagement being displayed on the one or more displays is selected based upon the information analysis and based upon the one or more brand products,

      (ii) engagement of the customer based upon the information analysis, wherein the engagement is received by the customer by a second person at the brink-and-mortar retail store who can directly interact with the customer based upon (A) the information analysis received by the second person by an electronic communication sent to the second person by a system at the brink-and-mortar retail store and (B) based upon the one or more brand products,

      (iii) provision of marketing or advertising information directed to the customer based upon the analyzed information and based upon the one or more brand products, wherein the marketing or advertising information is received by the customer through a display at the one or more brick-and-mortar retail stores or by receiving the marketing or advertising information on a mobile device of the customer, and

      (iv) provision of a coupon directed to the customer based upon the analyzed information, wherein the coupon is received by the customer either as a printed out coupon or as a digital coupon.

## THE '890 PATENT

39.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,042,890 (the "'890 Patent") titled "Method and System for Customer Assistance in a Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '890 Patent is attached to this Complaint at Exhibit C.

40.    The '890 Patent issued from U.S. Patent Application No. 16/837,711, filed on April 1, 2020.

41.    The '890 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

42.     The Patent Office issued the '890 Patent on June 22, 2021, after a full and fair examination.

43.     The '890 Patent is valid and enforceable.

44.     The '890 Patent relates to an improved method for enhancing customer assistance in retail stores through the use of advanced information monitoring systems.

45.     The inventors of the '890 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior influenced by digital technology. The patent offers a solution by integrating technology to analyze customer interactions with products in real-time, providing targeted assistance and enhancing the shopping experience.

46.     The '890 Patent provides several advancements over previous methods, such as real-time analysis of customer interactions with products, including sentiment and object identification information, and utilizing this data to manage inventory and offer real-time responses.



FIG. 1



*FIG. 2*

47.     The '890 Patent describes and claims a specific method involving the use of information monitoring devices to gather and analyze data about a customer's interaction with products in a retail store. This method includes steps for gathering object identification and sentiment information about the product, analyzing this information in real-time, and providing appropriate responses to enhance the customer's shopping experience.

48.     Claim 1 of the '890 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about a person at a retail store, wherein
    (i) the person is in proximity to at least one of the one or more information monitoring devices at the retail store,
    (ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both, and
    (iii) the step of gathering information using the one or more information monitoring devices comprises
        (A) gathering object identification information of a product that the person is interested in purchasing, and
        (B) gathering sentiment information of the person with respect to the product;
(b) analyzing the information in real time using (A) the server, (B) the one or more databases, or (C) both gathered by the information monitoring devices about the shopping activities of the plurality of persons to manage inventory of the products in the retail store at the one or more product points, wherein the analyzed information comprises the object identification information and the sentiment information; and

(c) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

  (i) sending a communication to the person directing the person to a location in the retail store at which the person can interact with the product,

  (ii) engaging the person based upon the product, wherein the engaging is performed using one more displays and content being displayed on the one or more displays is selected based upon the product,

  (iii) sending a communication to a second person in the retail store who can then in real time interact with the person regarding the product,

  (iv) providing marketing or advertising information to the person in real time based upon the product, wherein the marketing or advertising information is either product to the person by a display at the retail store or by sending the marketing or advertising information to a mobile device of the person, and

  (v) providing a coupon to the person in real time based upon the product, wherein the coupon is either a printed out coupon or a digital coupon.

## THE '880 PATENT

49.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,301,880 (the "'880 Patent") titled "Method and System for Inventory Management in a Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '880 Patent is attached to this Complaint at Exhibit D.

1.      The '880 Patent issued from U.S. Patent Application No. 16/837,645 filed on April 1, 2020.

2.      The '880 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

3.      The Patent Office issued the '880 Patent on April 12, 2022, after a full and fair examination.

4.      The '880 Patent is valid and enforceable.

5.      The '880 Patent introduces a novel method and system for real-time inventory management within a retail store setting, designed to improve operational efficiency and customer experience.

6.      The '880 Patent addresses the emerging challenges faced by brick-and-mortar retail stores due to the increasing prevalence of online shopping and showrooming. It provides innovative solutions to enhance in-store customer experiences and counter the competitive pressures from online retail by leveraging real-time data analysis and inventory management strategies.

7.      The inventors of the '880 Patent recognized that there existed a significant gap in the brick-and-mortar retail sector's ability to provide real-time, personalized experiences to customers, a feature commonly leveraged by online retailers. The patent offers a method and system that bridges this gap by utilizing technology to analyze consumer behavior and dynamically adjust marketing and inventory strategies.

8.      The '880 Patent provides several advantages over the prior art, such as real-time tracking of product interactions and the ability to send immediate responses for inventory adjustments. This method aims to minimize stockouts, enhance customer satisfaction, and boost sales by ensuring the availability of popular products.



*FIG. 1*



*FIG. 2*

9.    The '880 Patent describes and claims a specific system incorporating servers, image recognition, and information monitoring devices to manage inventory, track product interactions, and generate real-time responses for inventory management based on data analysis.

10.    Claim 1 of the '880 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about shopping activities of a plurality of persons at a retail store, wherein
     (i) the retail store comprises a plurality of products that are stocked within the retail store, wherein the plurality of products are stocked upon one or more product points selected from a group consisting of shelves, end caps, displays, and combinations thereof,
     (ii) persons in the plurality of persons are in proximity to at least one of the one or more information monitoring devices at the retail store,

(iii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both;

(iv) the one or more information monitoring devices comprise one or more video image devices,

(vi) the step of gathering information using the one or more information monitoring devices comprises

    (A) gathering product interaction information based upon product interactions the persons have with one or more products in the retail store, wherein the product interactions information comprises (I) the one or more products are picked up by the persons at the retail store, and (II) the one or more products are carried away by the persons at each of the retail store, and

    (B) gathering object identification information of the one or more products that the persons interacted with during the product interactions;

(b) analyzing the information in real time using (A) the server, (B) the one or more databases, or (C) both gathered by the information monitoring devices about the shopping activities of the plurality of persons to manage inventory of the products in the retail store at the one or more product points, wherein the analyzed information comprises the product interaction information and the object identification information; and

(c) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

    (i) sending a communication to a retail person to check inventory levels for a first product of the one or more products at the product point for the first product,

    (ii) sending a communication to the retail store person to immediately re-stock the one or more first products at the product point for the first product,

    (iii) sending a communication to the retail store person to contact a distribution center to obtain the one or more first products for delivery to the retail store for restocking the one or more first products at the product point for the first product, and

    (iv) sending a communication to add one or more first products to an inventory order for inventory for the retail store.

**SENSORMATIC**

11.    Sensormatic provides in-store products and solutions to its retailer customer which provides loss prevention, inventory management, shopper traffic analytics, and consumer behavior based upon information gathered about consumers shopping at the retailer customers' stores.

12.    Sensormatic offers technology, products, and services for providing these products and solutions to its customers' retail stores utilize gathered demographic information for consumers in order to segment store visitors and their shopping paths by demographics, allowing Sensormatic's customers to better understand shopping and purchasing behavior by consumers in their retail stores.

13.    Defendants' products and solution services practice the patented systems and methods of the Patents-in-Suit.

14.    Defendants' implementation of these patented technologies in their products and solution services has, on information and belief, significantly contributed to the efficiency and profitability of shopper analytics products utilized by Defendants' customers.

15.    Defendants have been aware of Alpha Modus and the Patents-in-Suit at least as early as the filing of this Complaint.

16.    The financial gains accrued by Defendants and their customers through the use of Alpha Modus's patented technology have been substantial, providing Defendants and their customers with competitive advantages in the market.

17.    The benefits reaped by Defendants through the exploitation of Alpha Modus's intellectual property have resulted in corresponding harm to Alpha Modus. This harm includes but is not limited to lost business opportunities, revenue, and diminution of the value of its patented technology.

18.      This case is filed to address and seek redress for the unauthorized use of Alpha Modus's patented technology by Defendants and by Defendants' customers in retail store settings, which has led to significant commercial gains for Defendants and their customers at the expense of Alpha Modus's proprietary rights and investments.

## COUNT I

## (DIRECT PATENT INFRINGEMENT OF THE '825 PATENT)

19.      Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

20.      Defendants have made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '825 Patent, including shopper analytics technology utilizing Defendants' products and services including Shopper Journey, Traffic Insights, ShopperTrak Analytics, Traffic Counting, Inventory Intelligence, TrueVUE Cloud, TrueVUE Inventory Intelligence software, Shrink Analytics with Video Intelligence, Shopper Views, Synergy Media Displays, Brand Vitality Meter, and other shopper analytics products and services (collectively "the Accused Products").

21.      The Accused Products utilize one or more information monitoring devices, including video image devices, to gather information about persons at a location, specifically in retail stores of Defendants' customers.

22.      The Accused Products include systems operably connected to a server and/or one or more databases, which analyze the information gathered by the information monitoring devices, including from Aurora sensors and other Accused Products.

23.    The Accused Products collect demographic characteristics and tracking characteristics of persons in proximity to the information monitoring devices, including from Aurora sensors and other Accused Products, in Defendants' customers' stores.

24.    The Accused Products analyze in real-time the information gathered by the information monitoring devices of persons in proximity to the devices.

25.    The real-time analysis generated by the Accused Products is utilized to select and send a communication to a sales associate, where the communication includes at least a portion of the information gathered by the information monitoring devices and/or the real-time analysis.

26.    Defendants have directly infringed the '825 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '825 Patent.

27.    The Accused Products satisfy each and every element of the asserted claim of the '825 Patent either literally or under the doctrine of equivalents.

28.    Defendants' infringing activities are and have been without authority or license under the '825 Patent.

29.    As a direct and proximate result of Defendants' infringement of the '825 Patent, Alpha Modus has suffered and will continue to suffer damage.

30.    Alpha Modus is informed and believes, and on that basis alleges, that Defendants have been aware of the '825 Patent and their infringement thereof.  Despite this knowledge, Defendants have continued to supply the Accused Products, and Defendants' customers have continued to use the Accused Products in implementing shopper analytics technology.

31.    Alpha Modus is informed and believes that Defendants knew or were willfully blind to the patented technology of the '825 Patent. Despite this knowledge or willful blindness,

Defendants have acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

32.    Alpha Modus is informed and believes that Defendants have made no efforts to avoid infringement of the '825 Patent, despite their knowledge and understanding that their products and systems infringe the '825 Patent.

33.    Therefore, Defendants' infringement of the '825 Patent is willful and egregious, warranting an enhancement of damages.

34.    As such, Defendants have acted and continue to act recklessly, willfully, wantonly, deliberately, and egregiously in their infringement of the '825 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT II

## (INDUCED PATENT INFRINGEMENT OF THE '825 PATENT)

35.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

36.    Defendants are liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '825 Patent, at least as early as the filing of this Complaint, because they knowingly induce, aid, and direct others to use the Accused Products in a manner that infringes the '825 Patent.

37.    Defendants' customers have utilized the Accused Products in shopper analytics products which practice the patented methods of the '825 Patent.

38.     Defendants' implementation of the Accused Products demonstrates specific intent to induce infringement of the '825 Patent. Defendants encourage, direct, aid, and abet the use and operation of the Accused Products in a manner that infringes the '825 Patent.

39.     Defendants' knowledge of the '825 Patent and their implementation of the Accused Products, combined with the ongoing use of the Accused Products by Defendants' customers, demonstrates Defendants' knowledge and intent that the Accused Products be used in a manner that infringes the '825 Patent.

40.     Defendants' actions and the manner in which the Accused Products are used by Defendants' customers, consistent with Defendants' promotions and instructions, demonstrate Defendants' specific intent to induce infringement of the '825 Patent.

41.     Alpha Modus is informed and believes, and on that basis alleges, that Defendants knew or were willfully blind to the fact that they were inducing others, including their customers and staff, to infringe by practicing, either themselves or in conjunction with Defendant, one or more claims of the '825 Patent.

42.     As a direct and proximate result of Defendants' induced infringement of the '825 Patent, Alpha Modus has suffered and will continue to suffer damage.

43.     Alpha Modus is entitled to recover from Defendants compensation in the form of monetary damages suffered as a result of Defendants' infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT III

## (DIRECT INFRINGEMENT OF THE '550 PATENT)

44.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

45.    Defendants have made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '550 Patent, including the shopper analytics technology of the Accused Products.

46.    The Accused Products embody a system for monitoring and analyzing consumer behavior and product interaction information in a retail store setting, as claimed in the '550 Patent.

47.    The Accused Products utilize a server comprising one or more server processors, and a server memory storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '550 Patent.

48.    The functions include gathering and analyzing information from information monitoring devices, including video image devices, to track consumer interactions with retail products, identifying products of interest, associating such information with consumer data, and generating marketing or promotional content based on the collected information in real-time.

49.    Defendants have directly infringed the '550 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '550 Patent.

50.    The Accused Products satisfy each and every element of the asserted claim of the '550 Patent either literally or under the doctrine of equivalents.

51.    Defendants' infringing activities are and have been without authority or license under the '550 Patent.

52.    As a direct and proximate result of Defendants' infringement of the '550 Patent, Alpha Modus has suffered and will continue to suffer damage.

53.     Alpha Modus is informed and believes, and on that basis alleges, that Defendants have been aware of the '550 Patent and their infringement thereof. Despite this knowledge, Defendants have continued to make, use, sell, and offer for sale the Accused Products.

54.     Alpha Modus is informed and believes that Defendants knew or were willfully blind to the patented technology of the '550 Patent. Despite this knowledge or willful blindness, Defendants have acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

55.     Alpha Modus is informed and believes that Defendants have made no efforts to avoid infringement of the '550 Patent, despite their knowledge and understanding that their products and systems infringe the '550 Patent.

56.     Therefore, Defendants' infringement of the '550 Patent is willful and egregious, warranting an enhancement of damages.

57.     As such, Defendants have acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in their infringement of the '550 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT IV

## (INDUCED PATENT INFRINGEMENT OF THE '550 PATENT)

58.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

59.     Defendants are liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '550 Patent, at least as early as the filing of this Complaint, because they

knowingly induce, aid, and direct others to use the Accused Products in a manner that infringes the '550 Patent.

60.    Defendants' customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '550 Patent.

61.    Defendants' use of the Accused Products demonstrates specific intent to induce infringement of the '550 Patent. Defendants encourage, direct, aid, and abet the use and operation of the Accused Products in a manner that infringes the '550 Patent.

62.    Defendants' knowledge of the '550 Patent, combined with their ongoing use of the Accused Products, demonstrates Defendants' knowledge and intent that the Accused Products be used in a manner that infringes the '550 Patent.

63.    Defendants' actions and the manner in which the Accused Products are used by Defendants' customers, consistent with Defendants' promotions and instructions, demonstrate Defendants' specific intent to induce infringement of the '550 Patent.

64.    Alpha Modus is informed and believes, and on that basis alleges, that Defendants knew or were willfully blind to the fact that they were inducing others, including their customers and staff, to infringe by practicing, either themselves or in conjunction with their customers, one or more claims of the '550 Patent.

65.    As a direct and proximate result of Defendants' induced infringement of the '550 Patent, Alpha Modus has suffered and will continue to suffer damage.

66.    Alpha Modus is entitled to recover from Defendants compensation in the form of monetary damages suffered as a result of Defendants' infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT V

## (DIRECT INFRINGEMENT OF THE '890 PATENT)

67.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

68.     Defendants have made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '890 Patent, including the shopper analytics technology of the Accused Products.

69.     The Accused Products embody a method for customer assistance in a retail store as claimed in the '890 Patent.

70.     The Accused Products include the use of one or more information monitoring devices to gather information about a person at a retail store, in line with claim 1 of the '890 Patent.

71.     The Accused Products are operably connected to (A) a server, (B) one or more databases, or (C) both, and perform functions such as gathering object identification information of a product and gathering sentiment information of the person with respect to the product.

72.     The Accused Products analyze the information in real-time and provide a response based upon the analyzed information gathered by the information monitoring devices, including but not limited to engaging the person based on the product and providing marketing or advertising information.

73.     Defendants have directly infringed the '890 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '890 Patent.

74.     The Accused Products satisfy each and every element of the asserted claim of the '890 Patent either literally or under the doctrine of equivalents.

75.    Defendants' infringing activities are and have been without authority or license under the '890 Patent.

76.    As a direct and proximate result of Defendants' infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

77.    Alpha Modus is informed and believes, and on that basis alleges, that Defendants have been aware of the '890 Patent and their infringement thereof. Despite this knowledge, Defendants have continued to make, use, sell, and offer for sale the Accused Products.

78.    Alpha Modus is informed and believes that Defendants knew or were willfully blind to the patented technology of the '890 Patent. Despite this knowledge or willful blindness, Defendants have acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

79.    Alpha Modus is informed and believes that Defendants have made no efforts to avoid infringement of the '890 Patent, despite their knowledge and understanding that their products and systems infringe the '890 Patent.

80.    Therefore, Defendants' infringement of the '890 Patent is willful and egregious, warranting an enhancement of damages.

81.    As such, Defendants have acted and continue to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '890 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VI

## (INDUCED PATENT INFRINGEMENT OF THE '890 PATENT)

82.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

83.    Defendants are liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '890 Patent, at least as early as the filing of this Complaint, because they knowingly induce, aid, and direct others to use the Accused Products in a manner that infringes the '890 Patent.

84.    Defendants' customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '890 Patent.

85.    Defendants' use of the Accused Products demonstrates specific intent to induce infringement of the '890 Patent. Defendants encourage, direct, aid, and abet the use and operation of the Accused Products in a manner that infringes the '890 Patent.

86.    Defendants' knowledge of the '890 Patent, combined with their ongoing use of the Accused Products, demonstrates Defendants' knowledge and intent that the Accused Products be used in a manner that infringes the '890 Patent.

87.    Defendants' actions and the manner in which the Accused Products are used by Defendants' customers, consistent with Defendants' promotions and instructions, demonstrate Defendants' specific intent to induce infringement of the '890 Patent.

88.    Alpha Modus is informed and believes, and on that basis alleges, that Defendants knew or were willfully blind to the fact that they were inducing others, including their customers and staff, to infringe by practicing, either themselves, or in conjunction with their customers, one or more claims of the '890 Patent.

89.    As a direct and proximate result of Defendants' induced infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

90.    Alpha Modus is entitled to recover from Defendants compensation in the form of monetary damages suffered as a result of Defendants' infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT VII

## (DIRECT PATENT INFRINGEMENT OF THE '880 PATENT)

91.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

92.    Defendants have made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '880 Patent, including the shopper analytics technology of the Accused Products.

93.    The Accused Products embody a method for customer assistance in a retail store as claimed in the '880 Patent.

94.    The Accused Products include the use of one or more information monitoring devices to gather information about the shopping activities of persons at a retail store, in line with claim 1 of the '880 Patent.

95.    The Accused Products are operably connected to (A) a server, (B) one or more databases, or (C) both, and include video image devices.

96.    The Accused Products perform functions such as gathering product interaction information of the person with respect to the products that the person interacts with and gathering object identification information for the products that the persons interacted with during the product interactions.

97.    The Accused Products analyze the information in real time and provide a response based upon the analyzed information gathered by the information monitoring devices, including but not limited to sending a communication to a retail person regarding the inventory of the products interacted with.

98.    Defendants have directly infringed the '880 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '880 Patent.

99.    The Accused Products satisfy each and every element of the asserted claim of the '890 Patent either literally or under the doctrine of equivalents.

100.    Defendants' infringing activities are and have been without authority or license under the '880 Patent.

101.    As a direct and proximate result of Defendants' infringement of the '880 Patent, Alpha Modus has suffered and will continue to suffer damage.

102.    Alpha Modus is informed and believes, and on that basis alleges, that Defendants have been aware of the '880 Patent and their infringement thereof. Despite this knowledge, Defendants have continued to make, use, sell, and offer for sale the Accused Products.

103.    Alpha Modus is informed and believes that Defendants knew or was willfully blind to the patented technology of the '880 Patent. Despite this knowledge or willful blindness, Defendants have acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

104.    Alpha Modus is informed and believes that Defendants have made no efforts to avoid infringement of the '880 Patent, despite their knowledge and understanding that their products and systems infringe the '880 Patent.

105. Therefore, Defendants' infringement of the '880 Patent is willful and egregious, warranting an enhancement of damages.

106. As such, Defendants has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '880 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VIII

## (INDIRECT PATENT INFRINGEMENT OF THE '880 PATENT)

107. Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

108. Defendants are liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '880 Patent, at least as early as the filing of this Complaint, because they knowingly induce, aid, and direct others to use the Accused Products in a manner that infringes the '880 Patent.

109. Defendants have implemented and utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '880 Patent.

110. Defendants' use of the Accused Products demonstrates specific intent to induce infringement of the '880 Patent. Defendants encourage, direct, aid, and abet the use and operation of the Accused Products in a manner that infringes the '880 Patent.

111. Defendants' knowledge of the '880 Patent, combined with their ongoing making of, use of, sale of, and offers to sell of the Accused Products, demonstrates Defendants' knowledge and intent that the Accused Products be used in a manner that infringes the '880 Patent.

112.    Defendants' actions and the manner in which the Accused Products are used by Defendants' customers, consistent with Defendants' promotions and instructions, demonstrate Defendants' specific intent to induce infringement of the '880 Patent.

113.    Alpha Modus is informed and believes, and on that basis alleges, that Defendants knew or were willfully blind to the fact that they were inducing others, including their customers and staff, to infringe by practicing, either themselves, or in conjunction with their customers, one or more claims of the '880 Patent.

114.    As a direct and proximate result of Defendants' induced infringement of the '880 Patent, Alpha Modus has suffered and will continue to suffer damage.

115.    Alpha Modus is entitled to recover from Defendants compensation in the form of monetary damages suffered as a result of Defendants' infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## **JURY DEMAND**

Alpha Modus hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## **PRAYER FOR RELIEF**

WHEREFORE, Alpha Modus prays for relief against Defendants as follows:

(A)    An entry of judgment that Defendants have infringed and are directly infringing one or more claims of each of the Patents-in-Suit;

(B)    An entry of judgment that Defendants have infringed and are indirectly infringing one or more claims of each of the Patents-in-Suit;

(C)    An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of the Patents-in-Suit;

(D)    An entry of judgment that the Patents-in-Suit are valid and enforceable;

(E)    An order awarding damages sufficient to compensate Alpha Modus for Defendants' infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

(F)    A determination that Defendants' infringement has been willful, wanton, deliberate, and egregious;

(G)    A determination that the damages against Defendants be trebled or for any other basis within the Court's discretion pursuant to 35 U.S.C. § 284;

(H)    A finding that this case against Defendants is "exceptional" and an award to Alpha Modus of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

(I)    An accounting of all infringing sales and revenues of Defendants, together with post judgment interest and prejudgment interest from the first date of infringement of the each of the Patents-in-Suit; and

(J)    Such further and other relief as the Court may deem proper and just.

Dated: October 3, 2025                    Respectfully submitted,

/s/ *Christopher E. Hanba*
Christopher E. Hanba
Texas Bar No. 24121391
chanba@princelobel.com
Ariana D. Pellegrino *
Michigan Bar P79104
apellegrino@princelobel.com
  *  Not admitted in Texas

Joshua G. Jones
Texas Bar No. 24065517
jjones@princelobel.com
Bryan D. Atkinson
Texas Bar No. 24036157
batkinson@princelobel.com

PRINCE LOBEL TYE LLP
500 W. 2nd Street, Suite 1900
Austin, Texas 78701
Telephone: (512) 737-2415

*Attorneys for Plaintiff*
*Alpha Modus, Corp.*